UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DESI DUNCAN CAMPBELL,<br><br>Defendant. | 1:17-CR-10033-CBK<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

## INTRODUCTION

Defendant was indicted with four counts of aggravated sexual abuse of a child
under the age of 12 years, one count for each of the years 2004 – 2007. Following a
detention hearing, the United States Magistrate Judge released defendant on conditions,
including the Adam Walsh mandatory conditions of release as required by 18 U.S.C.
§ 3142(c).[1] Defendant moved to modify the conditions of release, contending that the
Adam Walsh conditions are unconstitutional, both facially and as applied to defendant.
The Magistrate Judge denied the motion, finding that the conditions are constitutional
both facially and as applied. Defendant has filed an appeal of the order pursuant to 18
U.S.C. § 3145(c).

## DECISION

The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248,
was enacted on July 27, 2006. Most notable for its Title I provisions, the Sex Offender
Registration and Notification Act, Title II, the Improving Federal Criminal Law
Enhancements Needed to Protect Children From Sexual Attacks and Other Violent

---

[1] The Order setting conditions of release refers to the conditions as pursuant to 18 U.S.C. § 3142(e) and
the parties have repeated that citation in the pleadings. Section 3142(e) sets forth the authority under the
Bail Reform Act for detention pending trial and the crimes for which a rebuttable presumption of
detention applies, including, as applicable here, offenses involving a minor victim.

Crimes, is no less onerous. Title II enacted enhanced penalties and statutes of limitation for child sexual abuse and sex trafficking crimes. Section 216, entitled Improvements to the Bail Reform Act to Address Sex Crimes and Other Matters, amended 18 U.S.C. § 3142(c) to include the requirement that "in any case that involves a minor victim" under federal criminal statutes proscribing kidnapping, sex trafficking, sexual abuse, sexual exploitation (including child pornography), and interstate transportation for illegal sexual activity, "any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii)." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, Sec. 216, 120 Stat. 587.

The mandatory Adam Walsh conditions of release are electronic monitoring and:

    (iv)    abide by specified restrictions on personal associations, place of abode, or travel;

    (v)    avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

    (vi)    report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

    (vii)    comply with a specified curfew;

    (viii)    refrain from possessing a firearm, destructive device, or other dangerous weapon

18 U.S.C.A. § 3142(c)(1)(B).

The subsection (vi) condition to report as directed to the pretrial services officer was included as part of defendant's general conditions of release. The subsection (iv) travel restriction condition was incorporated into the subsection (vii) curfew condition. The subsection (iv) personal associations restriction was incorporated into the subsection (v) no contact order. The Magistrate Judge thus included four conditions that were identified as Adam Walsh conditions: (1) electronic monitoring, (2) prohibition from possession of firearms, (3) no-contact order, and (4) curfew restriction. The curfew restriction imposed in this case essentially amounted to home confinement with work

2

release. The magistrate was careful to note that, although the mandatory conditions were not unconstitutional, he would not have imposed them but for the § 3142(c) mandate

## I. Facial Challenge.

Defendant contends that the Adam Walsh release conditions are facially unconstitutional. To succeed in a facial challenge, defendant must establish "that no set of circumstances exist under which the Act would be valid, *i.e.*, that the law is unconstitutional in all of its applications." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190, 170 L. Ed. 2d 151 (2008) (*citing* United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697 (1987)).

The Magistrate Judge held that the Adam Walsh conditions were not facially unconstitutional based upon the decision of the United States Court of Appeals for the Eighth Circuit in United States v. Stephens, 594 F.3d 1033 (8th Cir. 2010). The Eighth Circuit in Stephens, in denying a facial challenge to the Adam Walsh provisions of the Bail Reform Act, held that a court "need only find them 'adequate to authorize the pretrial detention of at least some persons charged with crimes,' whether or not they might be insufficient in some particular circumstances." United States v. Stephens, 594 F.3d at 1037-38, (*quoting* United States v. Salerno, 481 U.S. at 751, 107 S. Ct. at 2100). "One can imagine many defendants for whom curfew and electronic monitoring would be necessary to assure their presence at trial or ensure the safety of the community." United States v. Stephens, 594 F.3d at 1038.

The Eighth Circuit in Stephens rejected a facial Eighth Amendment challenge to the § 216 mandatory conditions of release. The Eighth Amendment "fails to say all arrests must be bailable." United States v. Stephens, 594 F.3d at 1039 (*quoting* Carlson v. Landon, 342 U.S. 524, 546, 72 S. Ct. 525, 537, 96 L. Ed. 547 (1952)).

> Congress may ban bail in entire classes of cases . . . We see nothing in the Supreme Court's relevant precedents to indicate the Adam Walsh Act's much less restrictive mandatory release conditions are facially unconstitutional.

United States v. Stephens, 594 F.3d at 1039.

The Eighth Circuit in Stephens also rejected a due process challenge that § 216 of the Adam Walsh Act strips defendants of an individualized judicial consideration of the liberty restrictions necessary in an individual case.

> [Defendant] overestimates the impact of § 216 of the Adam Walsh Act upon the Bail Reform Act. Section 216 does not deprive child pornography defendants of a detention hearing or an individualized determination whether detention or release is appropriate. As relevant here, the only effect of § 216 is to require a curfew and some electronic monitoring. The defendant remains entitled to a detention hearing and a large number of individualized determinations — including an individualized determination as to the extent of any mandatory conditions of release . . . Because "curfew" and "electronic monitoring" remain undefined, the district court possesses many tools in its discretionary toolkit.

United States v. Stephens, 594 F.3d at 1039.

The United States Court of Appeals for the Ninth Circuit has also rejected a facial challenge to the Adam Walsh mandatory conditions of release. In United States v. Peeples, decided ten months after Stephens, the Ninth Circuit summarily disposed of a facial challenge based upon the "no set of circumstances exist" test set out in Salerno and adopted by Stephens. United States v. Peeples, 630 F.3d 1136, 1138 (9th Cir. 2010). The *per curium* opinion in Peeples completely ignored a prior Ninth Circuit panel opinion in United States v. Kennedy, 327 Fed. Appx. 706 (9th Cir. 2009), wherein the Ninth Circuit avoided constitutional infirmity by construing "the Walsh Act to require the district court to exercise its discretion, to the extent practicable, in applying the mandatory release conditions." United States v. Kennedy, 327 Fed. Appx. at 707.

There are a number of district and magistrate courts that have considered the facial constitutionality of the Adam Walsh mandatory release conditions.[2] None of the cases

---

[2] As of 2012, "seventeen courts have addressed the constitutionality of the mandatory pretrial release provision of the AWA Amendments, focusing primarily on the Excessive Bail Clause of the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the separation of powers doctrine." Dearinger, Bryan, The Mandatory Pretrial Release Provision of the Adam Walsh Act Amendments: How "Mandatory" Is It, and Is

have held that the conditions are facially invalid under the Eighth Amendment. Some of the lower courts to have considered the issue of the constitutionality of the Adam Walsh mandatory release conditions have held, consistent with Stephens and Peeples, that such conditions do not facially violate the Fifth Amendment. *See* United States v. Cossey, 637 F. Supp. 2d 881 (D. Mont. 2009) (Molloy, U.S. District Judge), United States v. Frederick, 2010 WL 2179102 (D.S.D. 2010) (Moreno, U.S. Magistrate Judge), and United States v. Rondeau, 2010 WL 5253847 (D.R.I. 2010) (Smith, U.S. District Judge).

Most of the lower courts to have considered the issue of the constitutionality of the Adam Walsh mandatory release conditions have held that such conditions are facially unconstitutional under the Fifth Amendment. *See* United States v. Crowell, 2006 WL 3541736 (W.D.N.Y. 2006) (Forschio, U.S. Magistrate Judge), United States v. Vujnovich, 2007 WL 4125901 (D. Kan. 2007) (Waxse, U.S. Magistrate Judge), United States v. Torres, 566 F. Supp. 2d 591 (W.D. Tex. 2008) (Cardone, U.S. District Judge), United States v. Arzberger, 592 F. Supp. 2d 590 (S.D.N.Y. 2008) (Francis, U.S. Magistrate Judge) (analyzing each of the preceding cases), United States v. Merritt, 612 F. Supp. 2d 1074 (D. Neb. 2009) (Piester, U.S. Magistrate Judge), United States v. Smedley, 611 F. Supp. 2d 971 (E.D. Mo. 2009) (Noce, U.S. Magistrate Judge), United States v. Rueb, 612 F. Supp. 2d 1068 (D. Neb. 2009) (Piester, U.S. Magistrate Judge), United States v. Stephens, 2009 WL 3568668 (N.D. Iowa 2009) (Zoss, Chief U.S. Magistrate Judge), and United States v. Karper, 847 F. Supp. 2d 350 (N.D.N.Y. 2011) (Treece, U.S. Magistrate Judge). The Stephens decision overruled those lower court decisions from the Eighth Circuit.

In United States v. Torres, *supra*, in a case decided before the circuit opinions in Stephens and Peeples, the district court held that the Adam Walsh conditions are facially unconstitutional under the Fifth Amendment because they "strip away any independent judicial evaluation by mandating that every arrestee be treated the same, that is, subject to

---

It Constitutional?, 85 St. John's L. Rev. 1343, 1346 (2011) (reviewing in detail the many district and magistrate court opinions).

a curfew with electronic monitoring, among other conditions of release, regardless of circumstances." United States v. Torres, 566 F. Supp. 2d at 596.

In United States v. Karper, a magistrate judge from the Northern District of New York specifically rejected the Eighth and Ninth Circuits' conclusions that the mandatory conditions were facially valid under the Fifth Amendment. United States v. Karper, 847 F. Supp. 2d at 360-61 n. 6. Magistrate Judge Treece held that the curfew and electronic monitoring conditions "restrict the freedom of movement, also known as the right to travel, as well as dispense with the presumption of innocence at this stage of the criminal prosecution." United States v. Karper, 847 F. Supp. 2d at 357.

> This Court accepts the proposition that a party can only succeed with a facial challenge by establishing that no set of circumstances exists under which the Adam Walsh Act Amendments imposition of a curfew and electronic monitoring would be appropriate. We also accept that in some circumstances the imposition of the conditions of home detention and electronic monitoring may be warranted. What the Court cannot embrace is that in all similar cases there is a de jure, wholesale waiver of procedural protections, especially those so noted in *Salerno*. "[B]y mandating certain pretrial release conditions, [the Amendments] effectively create an irrebuttable presumption that the appearance at trial of arrestees charged with certain crimes, and the safety of the community, cannot be reasonable assured without such conditions." And, in this respect the law is unconstitutional in all of its applications because it universally forfeits an accused's opportunity to contest whether such conditions are necessary to ensure his return and to ameliorate any danger to the community.

United States v. Karper, 847 F. Supp. 2d at 359-360 (internal citations omitted). The Court in Karper held that the mandatory conditions of release violate the Fifth Amendment.

The Stephens panel rejected the claim that the Adam Walsh mandatory release conditions are facially invalid under the Fifth or Eighth Amendments. This Court is bound by the determination in Stephens. I must reject case law holding to the contrary.

## II. As-applied Challenge.

The distinction between facial and as-applied challenges is not based upon the analysis employed but goes to the remedy available. *See* Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331, 130 S. Ct. 876, 893, 175 L. Ed. 2d 753 (2010). A successful facial challenge would invalidate the challenged law in all circumstances.

> "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id.*; *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 893, 175 L. Ed. 2d 753 (2010) (holding that the distinction between a facial challenge and an as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint").

Minnesota Majority v. Mansky, 708 F.3d 1051, 1059 (8th Cir. 2013).

In an as-applied challenge, the challenger must show that the statute is unconstitutional "because of the way it was applied to the particular facts of their case." United States v. Salerno, 481 U.S. at 745, n. 3. The analysis is the same for both facial and as-applied constitutional challenges.

Defendant contends that the Adam Walsh release conditions are unconstitutional as applied to his case. Such a claim is not novel. The Stephens panel declined to consider any as-applied challenge based upon the "fact-poor record." United States v. Stephens, 594 F.3d at 1040.

The Magistrate in the present case developed the factual record at the detention hearing. Defendant filed a motion to amend the conditions, contending the mandatory Adam Walsh conditions violated the Fifth Amendment, Eighth Amendment, and the separation of powers doctrine. Defendant cited Karper, Polouizzi, the lower court decision in Stephens, Torres, the district court opinion in Vujnovich, and Crowell. The magistrate rejected the reasoning in the foregoing cases, finding that the cases were all distinguishable. The magistrate held that the defendant did have a hearing prior to the imposition of the conditions, that the defendant's charge of aggravated sexual abuse of a

7

child is a valid consideration in determining the conditions of release, and that the nature of the alleged charges against defendant "leads this Court to believe he poses a greater risk to the community" than the defendants in the above cases who were charged with possession of child pornography.

The magistrate was careful to note that he applied the Adam Walsh mandatory conditions only because they were required by § 3142(c), expressly finding that such conditions would not be applied in the absence of the statutory mandate. However, the magistrate held that the conditions are not unconstitutional as applied to the defendant.

The United States Court of Appeals for the Ninth Circuit rejected an as-applied challenge in United States v. Peeples, *supra*. The Ninth Circuit did not individually address the defendant's Fifth and Eighth Amendment claims nor his separation of powers doctrine claims. Instead, the Ninth Circuit construed the statute "to avoid raising doubts about its constitutionality." United States v. Peeples, 630 F.3d at 1138 (*quoting* St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 780, 101 S. Ct. 2142, 68 L. Ed. 2d 612 (1981)). *Citing* Stephens, the Ninth Circuit held that the Adam Walsh Act "does not mandate that the court require electronic monitoring in specific locations or during specific time periods" but instead "requires the district court to exercise its discretion in applying the mandatory release conditions to each individual's circumstances." United States v. Peeples, 630 F.3d at 1139. The Ninth Circuit thus avoided the as-applied constitutional question by adopting a construction of the mandatory release conditions requiring judicial discretion in their application to a particular defendant.

There are no other Courts of Appeals to have addressed the constitutionality of the Adam Walsh mandatory conditions of release. There are a number of district court and magistrate court judges who have addressed the constitutionality of the conditions as applied, as set forth below.

**A. Eighth Amendment.**

An individual's liberty interest is a fundamental right. United States v. Salerno, 481 U.S. at 750, 107 S. Ct. at 2103. Pre-trial releasees' liberty interests are addressed in the Eighth Amendment's Excessive Bail Clause. The Excessive Bail Clause does not

prohibit Congress from limiting the liberty interests of certain individuals, subject to judicial oversight. The Bail Reform Act of 1984, P.L. 98-473, Title II, Chap. I, codified at 18 U.S.C. §§ 3141 *et.seq.*, sets forth the law to be applied by the federal judiciary in determining detention or release (bail) of criminal defendants charged with federal crimes. The Eighth Amendment's Excessive Bail Clause has not been interpreted "to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail." United States v. Salerno, 481 U.S. at 754, 107 S. Ct. at 2105 (*quoting* Carlson v. Landon, 342 U.S. 524, 528, 72 S. Ct. 525, 528-29, 96 L. Ed. 547 (1952)).

Once a judicial officer makes the decision to release a defendant (admit the defendant to bail), regulation of pretrial release is not prohibited unless the conditions of release are excessive compared against the governmental interest sought to be protected. United States v. Salerno, 481 U.S. at 753-54, 107 S. Ct. at 2104-05. An "individual's strong interest in liberty . . . may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." United States v. Salerno, 481 U.S. at 750–51, 107 S. Ct. at 2103. The question is whether the mandatory conditions required by the Adam Walsh Act at 18 U.S.C. § 3142(c)(1) are excessive in this case.

Risk of flight and danger to the community are two factors identified in the Bail Reform Act that may warrant the imposition of conditions of release. 18 U.S.C. § 3142(c)(1). In this case, the mandatory conditions of the Adam Walsh Act were not imposed because a judge found them necessary to prevent flight or protect the community but instead because Congress found them necessary in cases charging certain specified crimes which involve a minor victim. The Magistrate Judge held a detention hearing at which he reviewed the facts and conducted an analysis of the law in connection with the defendant's request for review of the conditions imposed. The Magistrate Judge concluded that the court was bound to impose the Adam Walsh mandatory conditions but was careful to note that such conditions were "not based on findings of risk of flight or danger to the community."

By all accounts, Congress did not make findings on the necessity of the mandatory bail conditions. *See* United States v. Gardner, 523 F. Supp. 2d 1025, 1030 n. 2 (N.D. Cal. 2007) (Chen, United States Magistrate Judge).[3] Although there was no Congressional debate about the bail conditions included in the Adam Walsh Act, the House of Representatives' Subcommittee on Crime, Terrorism, and Homeland Security held hearings about the Act as a whole. *See* H.R. Rep. 109-218(I) (September 9, 2005). The purpose of the Adam Walsh Act as a whole was to address the "continuing epidemic of violence against children, and the need to reexamine existing laws intended to protect children." H.R. Rep. 109-218(I).[4] Title II of the Adam Walsh Act is entitled the "Federal Criminal Law Enhancements Needed to Protect Children from Sexual Attacks and Other Violent Crimes." Pub. L. No. 109-248, Tit. II, 109 Stat. at 611. The Title of the Act establishing the mandatory bail conditions itself states that the government's interest in the legislation was to protect children. United States v. Torres, 566 F. Supp. 2d at 600. Of course, nearly every other section of the Act protects children by enacting crimes, penalties, and restrictions on those who have already been convicted of crimes

---

[3] "The conditions now in dispute were added to the bill's language only seven days prior to the bill's final passage. The amendment including the conditions was passed without substantive debate or supporting congressional reports. *See* 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006) (debate following passage of Sen. Hatch's amendment in the nature of a substitute that included the mandatory conditions). There are legislative findings as to the Adam Walsh Act's other provisions. *See, e.g.*, H.R. Rep. No. 109-218(I), at 23-24 (2005) (discussing the need for an enhanced sex offender registry program)." United States v. Gardner, 523 F. Supp. 2d at 1030 n. 2.

[4] "The sexual victimization of children is overwhelming in magnitude and largely unrecognized and underreported. Statistics show that 1 in 5 girls and 1 in 10 boys are sexually exploited before they reach adulthood, yet less than 35 percent of these assaults are reported to authorities. This problem is exacerbated by the number of children who are solicited online–according to the Department of Justice, 1 in 5 children (10 to 17 years old) receive unwanted sexual solicitations online.

The Department of Justice statistics underscore the staggering toll that violence takes on our youth. Data from 12 States during the period of 1991 to 1996 show that 67 percent of all victims of sexual assault were juveniles (under the age of 18), and 34 percent were under the age of 12. One of every seven victims of sexual assault was under the age of 6." H.R. Rep. 109-218(I).

against children.[5] The § 216 mandatory conditions of release restrict the liberty of those who have been merely charged and arrested for alleged crimes against children. Congress apparently did not make specific findings about arrestees charged with crimes against children. *See* United States v. Karper, 847 F. Supp. 2d at 361 ("When enacting the Adam Walsh Act, Congress did not make any empirical finding that persons charged with the possession of child pornography are more likely to flee or continue to harm children, if released. There was no assessment nor statistical finding of a greater risk of future crimes by these defendants at this initial juncture of a prosecution."). The perceived evil required by Salerno must rest on the purpose of the Adam Walsh Act as a whole and on the stated purpose of Title II to protect children from sexual attacks and other violent crimes.

The first case to address the Adam Walsh mandatory conditions of release was United States v. Crowell, *supra*. Western District of New York Magistrate Judge Foschio held in Crowell that the imposition of the mandatory conditions upon three defendants charged with possession, receipt, or transporting child pornography amounted to excessive bail based upon the court's judgment that such conditions were unnecessary as to each defendant. United States v. Crowell, 2006 WL 3541736 at 7. After receiving evidence of defendants' "risk of flight and threat posed to the community, including to minor children who might be sexually abused and exploited by pornographic photography," Judge Foschhio determined that the "conditions necessary to achieve such objectives were less stringent than those required by the Adam Walsh Amendments." *Id.*

> [T]he understandable legislative desire to suppress the potential to continue the misconduct by persons while on release pending trial on such charges does not allow Congress to override fundamental constitutional safeguards of the accused who, despite the

---

[5] "Sex offenders have recidivism rates that often exceed those of other criminals. . . . In a 2003 report, the Justice Department found that released child molesters were more likely to be rearrested for child molesting than non-child molesters. Released sex offenders were four times more likely to be rearrested for a sex crime than released non-sex offenders." H.R. Rep. 109-218(I).

> reprehensible nature of the offenses, continue to enjoy the
> presumption of innocence in setting conditions of release.

United States v. Crowell, 2006 WL 3541736, at *3. *See also* United States v. Vujnovich, 2007 WL 4125901 (D. Kan. 2009) (magistrate court adopting Crowell without discussion and holding that the conditions violate the Fifth and Eighth Amendment and violate separation of powers), *aff'd* 2008 WL 687203 (D. Kan. 2008) (district court concluding the conditions violate the Fifth Amendment).

In United States v. Torres, *supra*, the defendant was charged with failure to update his sex offender registration to reflect that part of his workplace was located in New Mexico, although the only entrance to his work place was located in Texas, where he had properly registered. The district court found that the mandatory conditions violate the Eighth Amendment as applied to Torres because they were not warranted in his case. Judge Cardone noted that "an individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution." *Id*. at 597, (*citing* Williams v. Fears, 179 U.S. 270, 274, 21 S. Ct. 128, 45 L. Ed. 186 (1900)). "The Court has compared the interest which the Government seeks to protect, that is the safety of the community and of children, with the mandatory conditions of release, particularly the curfew and electronic monitoring. The Court finds these conditions are more stringent than what is required to achieve the Government's objectives." *Id*. at 601-02. The district court's decision that the conditions were excessive in Torres' case were largely based upon the fact that the defendant had properly registered and re-registered as required by law but was only under indictment because of the fact that his place of employment was "literally located on the Texas and New Mexico state line." *Id*. at 601.

The mandatory conditions of release were also held unconstitutional as applied in United States v. Polouizzi, 697 F. Supp. 2d 381 (E.D.N.Y. 2010). Judge Weinstein noted that, to constitute excessive bail, the "excess must be more than de minimus." *Id*. at 388. "Required wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be

considered a serious limitation on freedom by most liberty-loving Americans." *Id.* at 389.
Likewise, a curfew constrains freedom of movement during substantial periods of time. *Id.*
at 391. Judge Weinstein noted further that, although the Adam Walsh Act was enacted to
protect children, there were no congressional findings with respect to the electronic
monitoring or other mandatory conditions. *Id.* at 392 ("[T]here is no statistical foundation
for a finding of risk.").

> The government interest in protecting society is valid. Its response
> in this particular case is not. The child pornography pictures at issue
> were discovered on a computer, in a double locked room, in the
> privacy of defendant's garage. The defendant poses no risk to
> society in general, or to children specifically.

United States v. Polouizzi, 697 F. Supp. 2d at 395. Judge Weinstein found that the
electronic monitoring condition was excessive as applied. *Id.*

U.S. Magistrate Judge Treece held in United States v. Karper, *supra*, that where a
defendant "poses no risk of flight nor any danger to the community exclusive of the
nature of the charges lodged against him," the conditions of curfew and electronic
monitoring are excessive as applied. United States v. Karper, 847 F. Supp. 2d at 363-64.
Significantly, the Court in Karper made the following findings:

> As a matter of constitutional significance, the mere fact that a person
> is charged with a crime, does not "give rise to any inference that he
> is more likely than any other citizen to commit a crime if released
> from custody." United States v. Scott, 450 F.3d 863, 874 (9th Cir.
> 2006). After all, an accused is presumed innocent until proven
> guilty. *Id.* The Government did not proffer that Karper had
> physically harmed a minor or would in the future or even intimated
> any other inappropriate behavior by him, except pointing to the
> nature of the charge. His computer, which had the purported child
> pornography, had been seized and he was directed not to use a
> computer or employ any internet capabilities, without first informing
> pretrial services. These conditions, alone, eliminate the possibility
> of potential on-going harm to children by Karper. In essence he
> poses no risk to society.

United States v. Karper, 847 F. Supp. 2d at 363.

In the instant case, Campbell is charged with aggravated sexual abuse of a child.
A grand jury has determined that there is probable cause to believe that the defendant did

physically harm a child. Although the foregoing cases are instructive on the law, they are readily distinguishable on the facts.

The forgoing four cases are the only "published" cases that have, after a substantive analysis, determined that the Adam Walsh mandatory conditions of release violated the Eighth Amendment as applied. There are a number of cases that have come to the opposite conclusion.

In United States v. Gardner, U.S. Magistrate Judge Chen held that the electronic monitoring condition did not violate the excessive bail clause of a defendant charged with sex trafficking because the magistrate had imposed a curfew with enforcement via automated telephone contact. "Although electronic monitoring imposes an incremental degree of intrusiveness, including the physical inconvenience of having to wear a bracelet or anklet, [defendant] is not subject to a substantive restriction in her movement." United States v. Gardner, 523 F. Supp. 2d at 1030. This case is distinguishable because the magistrate in the present case did not find that a curfew was required, absent the mandatory requirement to impose one.

U.S. District Judge Molloy from the District of Montana rejected an as-applied challenge because the Adam Walsh amendments to the Bail Reform Act did not prevent the court from conducting "an individualized assessment in determining appropriate pretrial release conditions." United States v. Cossey, 637 F. Supp. 2d 881, at 10 (D. Mont. 1009). Judge Molloy noted that the magistrate judge exercised his discretion "to the extent practicable in applying the mandatory release conditions." Id. (quoting United States v. Kennedy, 327 Fed. Appx. at 708.

In United States v. Rondeau, U.S. District Judge Smith pointed out that the United States Supreme Court has upheld Congress's power to impose mandatory detention for certain classes of nonbailable cases. United States v. Rondeau, 2010 WL 5253847 at 2 (D.R.I. 2010) (citing Stephens, supra and Carlson v. Landon, 342 U.S. 524, 545 (1952)). "Given that, this Court sees no reason why Congress cannot also impose the mandatory release conditions provided for in the Adam Walsh Act, as such conditions are less

restrictive than detention, are narrowly tailored to this particular class of offenders, and as discussed above can be individualized to the specific defendant before the court." *Id.*

I do not find that the Eighth Amendment, standing alone, prohibits Congress from conditioning the release of a defendant charged with four counts of aggravated sexual abuse of a child upon the defendant's participation in some form of electronic monitoring, prohibition from possessing firearms or other dangerous weapons, prohibition from contacting the alleged victim or witnesses, and being subject to a curfew. The Eighth Circuit has instructed the court to exercise its discretion to determine the extent of the mandatory conditions.

Although the magistrate stated that he would not have imposed those conditions absent the § 3142(c) mandate, those conditions are appropriate. At a minimum, defendants charged with aggravated sexual abuse of a child should be prohibited from having contact with the alleged victim and witnesses and with others under the age of 18 without permission from a pre-trial services officer. Such a conditions are not an unreasonable limitation on the defendant's liberty. Indeed, such conditions are usually applied in any case.

Further, in light of my experience as a federal judge, prohibition from possession of firearms is not an unreasonable restriction on liberty and serves the interest in assuring the defendant's presence for trial. Defendant is facing a mandatory minimum sentence of 30 years custody, up to life imprisonment. In more than one case assigned to me, a person charged with such an offense has taken his own life.

It appears in this case that the magistrate applied the most restrictive curfew available, requiring home detention at any time defendant is not at work. If the magistrate did not think a curfew was necessary at all, he failed to fashion a curfew which was appropriate to the defendant's particular case. Although a district court reviews an appeal from the conditions of release *de novo*, no transcript was prepared in this case and I therefore have no factual basis to alter the extent of the curfew condition imposed. Electronic monitoring to "police" the defendant's compliance with a curfew is not a substantive restriction on the defendant's movement but is merely a technological

method of ensuring compliance. It is less intrusive than requiring the defendant to call in from a home telephone number several times a day to monitor compliance or to admit a pre-trial services officer into the home at unannounced times to monitor compliance.

### B. Fifth Amendment.

The Fifth Amendment to the United States Constitution provides, in part, that "No person shall ... be deprived of life, liberty, or property, without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690, 121 S. Ct. 2491, 2498, 150 L. Ed. 2d 653 (2001).

> This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

United States v. Salerno, 481 U.S. at 746, 107 S. Ct. at 2101 (internal citations omitted).

I previously set forth nine district and magistrate court cases wherein the court determined that the mandatory conditions of release facially violate the Fifth Amendment's Due Process Clause. The majority of the lower court cases who considered an as-applied Fifth Amendment challenge have determined that imposition of the conditions did not deprive the defendant of due process.

Magistrate Judge Chen held in Gardner, *supra*, that the electronic monitoring alone does not implicate any liberty interest but merely "functions as a virtual monitor standing watch outside of [defendant's] home to ensure she complies with her curfew." United States v. Gardner, 523 F. Supp. 2d at 1033. In Gardner, the Magistrate Judge had held a detention hearing and had concluded that a curfew was appropriate. Judge Chen opined that, as in Crowell, where a curfew would not have been ordered absent the

mandatory Adam Walsh conditions, such a condition could deprive a defendant of liberty, resulting in a deprivation of due process. *Id.* at 1034.

The Ninth Circuit in both Kennedy and Peeples held that the district court is required to "exercise its discretion, to the extent practicable, in applying the mandatory release conditions." United States v. Kennedy, 327 Fed. Appx. at 707, United States v. Peeples, 630 F.3d at 1139. Because the defendants' conditions of release were set after an individualized determination of their circumstances, the defendants were not deprived of procedural due process. *Id.*

In Cossey, also an appeal to the district court from the magistrate court's imposition of conditions of release, U.S. District Judge Molloy noted:

> The hearing reflects that Judge Lynch did not impose the AWA amendments as a blanket prescription without making an individualized determination. It reflects the contrary. Consistent with the Ninth Circuit panel's reasoning in *Kennedy* and with subsection (j), Judge Lynch exercised his discretion, "to the extent practicable, in applying the mandatory release conditions." The record shows that Judge Lynch, in consultation with Pretrial Services, "consider[ed] all relevant factors, including defendant's job-related needs, to determine the time of day or number of hours in specifying a curfew." *Kennedy*, 09–30054, 327 Fed. Appx. at 708, at 4. And he "fashion[ed] an appropriate condition of electronic monitoring that would enable [Cossey] to continue his employment." *Id.*

United States v. Cossey, 637 F. Supp. 2d at 890–91. It is apparent from the conditions of release that the magistrate in this case likewise considered defendant's work hours, making an individual determination of the curfew condition.

In United States v. Crites, U.S. District Judge Camp from the District of Nebraska rejected an as-applied challenge based upon the record available (no transcript was ordered in that case). The magistrate had made a determination that the conditions were necessary to reasonably assure the safety of the community and that the defendant did pose a risk of flight because of the charges (receipt and distribution of child pornography) against him. United States v. Crites, 2009 WL 1982782 at 2 (D. Neb. 2009). Because it appeared that the magistrate had analyzed whether the electronic monitoring and curfew

17

conditions were appropriate for that defendant, the application of the conditions did not violate defendant's procedural due process rights. *Id.*

U.S. District Judge Smith also held that the conditions did not violate due process as applied in Rondeau because the magistrate judge exercised his discretion and tailored the release conditions to the defendant's circumstances. United States v. Rondeau, 2010 WL 5253847 at 2. Judge Smith relied upon the fact that "the terms 'curfew' and 'electronic monitoring' are undefined by the statute and thus leave the district court with ample discretion in setting conditions of release." *Id.* at 1 (*citing* Kennedy, 327 Fed. Appx. at 707 and Stephens, 594 F.3d at 1039).

In only two cases to have considered the as-applied due process claim, the courts found that the mandatory conditions were unconstitutional. *See* United States v. Polouizzi, 697 F. Supp. 2d at 393 (Curfew and electronic monitoring constrain freedom-of-movement liberty without an individualized judicial finding which results in "an unjustified burden on all accused persons, even those who present no risks." "[A] per se rule that the governmental interest always outweighs the constitutional right of liberty denies due process."). *See also* United States v. Vujnovich, 2008 WL 687203 (finding that the mandatory condition of electronic monitoring created an "irrebuttable presumption that the defendant's appearance at trial and the safety of the community could not be assured" without the condition and "eliminated an independent judicial determination as to the necessity of the release conditions.").

Although the Stephens panel did not consider the constitutionality of the mandatory conditions under the Fifth Amendment as applied, the Eighth Circuit did instruct that judges avoid constitutional infirmity by conducting "an individualized determination as to the extent of any mandatory conditions of release." United States v. Stephens, 594 F.3d at 1039. As the Ninth Circuit held in Kennedy:

> Many of the terms of the Walsh Act are undefined. For example, a "condition of electronic monitoring" shall be imposed, but the statute does not require or define that condition to be continuous or limited to a particular locality. 18 U.S.C. § 3142(c)(1)(B). "[R]estrictions on personal associations, place of abode, or travel" are required, but the statute does not define the time, place or

18

> manner of such restrictions. 18 U.S.C. § 3142(c)(1)(B)(iv). A
> reporting requirement is mandated, but the statute does not specify a
> particular method or frequency to report. 18 U.S.C.
> § 3142(c)(1)(B)(vi). A "curfew" must be specified, but the statute
> also does not define it as a certain time of day or night or number of
> hours per day. 18 U.S.C. § 3142(c)(1)(B)(vii).

United States v. Kennedy, 327 Fed. Appx. at 707 (*quoted with approval in* United States v. Stephens, 594 F.3d at 1039).

Defendant in this case did receive a hearing prior to the imposition of the conditions of release. The magistrate judge did not simply impose the Adam Walsh conditions by rote as set forth in 18 U.S.C. § 3142(c) but instead tailored the conditions to the defendant's situation. Although the magistrate did not determine that all of the conditions were necessary to ensure the defendant's presence or to protect anyone, the conditions imposed were nevertheless tailored to defendant's situation. The imposition of the conditions did not violate due process in this case.

## III. Separation of Powers.

The doctrine of separation of powers "restrains each of the three branches of the Federal Government from encroaching on the domain of the other two." Clinton v. Jones, 520 U.S. 681, 691, 117 S. Ct. 1636, 1642, 137 L. Ed. 2d 945 (1997).

> Our Federal Constitution and state Constitutions of this country
> divide the governmental power into three branches. The first is the
> legislative, the second is the executive, and the third is the judicial,
> and the rule is that in the actual administration of the government
> Congress or the Legislature should exercise the legislative power,
> the President or the state executive, the Governor, the executive
> power, and the courts or the judiciary the judicial power, and in
> carrying out that constitutional division into three branches it is a
> breach of the national fundamental law if Congress gives up its
> legislative power and transfers it to the President, or to the judicial
> branch, or if by law it attempts to invest itself or its members with
> either executive power or judicial power.

J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 406, 48 S. Ct. 348, 351, 72 L. Ed. 624 (1928).

> Under "the basic concept of separation of powers . . . that flow[s] from the scheme of a tripartite government" adopted in the Constitution, "the 'judicial Power of the United States' . . . can no more be shared" with another branch than "the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto."

Stern v. Marshall, 564 U.S. 462, 483, 131 S. Ct. 2594, 2608, 180 L. Ed. 2d 475 (2011) (*quoting* United States v. Nixon, 418 U.S. 683, 704, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)).

> In establishing the system of divided power in the Constitution, the Framers considered it essential that "the judiciary remain[ ] truly distinct from both the legislature and the executive." The Federalist No. 78, p. 466 (C. Rossiter ed. 1961) (A. Hamilton). As Hamilton put it, quoting Montesquieu, "'there is no liberty if the power of judging be not separated from the legislative and executive powers.'" *Ibid.* (*quoting* 1 Montesquieu, Spirit of Laws 181).

Stern v. Marshall, 564 U.S. at 483, 131 S. Ct. at 2608–09.

The United States Supreme Court has been vigilant against the danger that a provision of law "impermissibly threatens the institutional integrity of the Judicial Branch." Mistretta v. United States, 488 U.S. 361, 383, 109 S. Ct. 647, 660–61, 102 L. Ed. 2d 714 (1989) (*quoting* Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 851, 106 S. Ct. 3245, 3258, 92 L. Ed. 2d 675 (1986)). As early as 1871, the Supreme Court held that "Congress has inadvertently passed the limit which separates the legislative from the judicial power" when Congress "prescribe[s] a rule for the decision of a cause in a particular way." United States v. Klein, 80 U.S. (13 Wall.) 128, 146-147, 20 L. Ed. 519 (1871).

The question here is whether Congress has encroached on the judicial powers by "withdraw[ing] from judicial cognizance" any matter which has traditionally been a matter subject to resolution by Article III courts. Commodity Futures Trading Comm'n v. Schor, 478 U.S. at 854, 106 S. Ct. at 3258. Limiting the extent of judicial discretion does not necessarily violate the separation of powers. The Eighth Circuit has observed

that Congress possesses the authority to limit judicial discretion at sentencing. United States v. Grant, 886 F.2d 1513, 1514 (8th Cir. 1989) (*citing* Mistretta v. United States, 488 U.S. 361, 109 S. Ct. 647, 650, 102 L. Ed. 2d 714 (1989)). Further, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467, 111 S. Ct. 1919, 1928, 114 L. Ed. 2d 524 (1991).

In Crowell, the first case to consider whether the Adam Walsh mandatory conditions of release violate the separation of powers, the magistrate judge held:

> It is well-established that the separation of powers doctrine is violated when Congress prescribes a rule of decision for courts to follow without permitting courts to exercise their judicial powers independently, including the consideration of relevant evidence. *United States v. Klein*, 80 U.S. 128, 146-47 (1871).
>
> In the instant case, by enacting the Adam Walsh Amendments, Congress has unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions. In so doing, Congress has commandeered the court into acting as its agent for purposes of imposing the targeted release conditions. Since the Constitution was adopted, the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power. *See Stack v. Boyle*, 342 U.S. 1, 4-5 (1951) (stating that beginning with "the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a), federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail" and observing that the judiciary is charged with "the fixing of bail" for each defendant "based upon standards relevant to the purpose of assuring the presence of that defendant."). As such, the Adam Walsh Amendments unmistakedly (sic) and unduly encroach upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework.

United States v. Crowell, 2006 WL 3541736 at 11. This was adopted without discussion in United States v. Vujnovich, 2007 WL 4125901.

21

While I would tend to adopt such reasoning, the fact remains that every "published" case to have considered the matter since has held contrary to Crowell. I found no cases wherein the courts of appeals have considered the separation of powers argument as to the mandatory conditions of release.

In United States v. Gardner, the district court specifically rejected the Crowell court's reasoning.

> The Court notes that although the right against excessive bail is constitutionally protected, and the enforcement of this right rests primarily with the courts, Congress has long had a substantial hand in shaping the bail process . . . Congress has not deprived the courts of the fundamental role of determining whether an arrestee is to be detained or released on conditions.

United States v. Gardner, 523 F. Supp. 2d at 1035–36. The Court in Arzberger likewise rejected Crowell, rejecting the argument that, by passing the Adam Walsh amendments, Congress impermissibly dictated a particular decision in a case. United States v. Arzberger, 592 F. Supp. 2d at 607. The Court's reasoning is instructive:

> "[W]ithin our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." Mistretta v. United States, 488 U.S. 361, 380, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989). Nevertheless, "the Framers did not intend for the three branches to remain autonomous." United States v. Polouizzi, 549 F. Supp. 2d 308, 399 (E.D.N.Y. 2008) (citing Mistretta, 488 U.S. at 379, 109 S. Ct. 647). Thus, there are numerous areas in which the responsibilities of the branches overlap. For example, although criminal sentencing is a core judicial function, Congress may nevertheless play a substantial role, for example by prescribing mandatory minimum sentences. See Chapman v. United States, 500 U.S. 453, 467, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991) (rejecting separation of powers challenge to mandatory minimum sentences); United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) (same). Similarly, the Supreme Court has already determined that Congress may impinge on the traditionally judicial function of bail setting by declaring that defendants who meet certain criteria will not be entitled to bail at all. See Salerno, 481 U.S. at 755, 107 S. Ct. 2095 (rejecting due process and excessive bail challenges to detention on basis of danger to

> community). Thus, the role of the judiciary in setting bail
> conditions, while primary, is not exclusive.

*Id.*

The district court in Cossey construed the Adam Walsh amendments as consistent with what the separation of powers requires: "an individualized assessment in determining appropriate pretrial release conditions. United States v. Cossey, 637 F. Supp. 2d at 891. Judge Molloy observed:

> The Bail Reform Act is still an outline a judicial officer follows
> when determining the conditions of pretrial release, giving the
> officer discretion constrained by the requirement that the accused be
> released pending trial subject to the least restrictive appropriate
> conditions. The Act is not rendered unconstitutional because
> Congress deemed it appropriate to direct a judicial officer's attention
> to specific conditions when determining prerelease conditions in
> certain cases.

*Id.*

I adopt the reasoning in Gardner, Arzberger, and Cossey. The Adam Walsh amendments to the Bail Reform Act do not violate the separation of powers doctrine. If, as the Supreme Court held in Solerno, Congress can legislate a class of cases for which bail is not available, then surely Congress can legislate a class of cases for which certain conditions of release are mandated.

## OTHER THOUGHTS

The so-called Adam Walsh Act includes a plethora of mandatory minimum sentences. Harsh penalties are required and, as we know, there is no parole in the federal system. It was a major expansion of federal jurisdiction in Indian Country. It amended the Major Crimes Act, 18 U.S.C. § 1153(a), to include "felony child abuse or neglect." Yet the Major Crimes Act itself makes certain crimes felonies. 18 U.S.C. § 2241 deals with aggravated sexual abuse with a mandatory minimum sentence of 30 years. This only applies in Indian Country or to an offense in which state lines were crossed or the offense occurred in a federal prison. I do not see the possibility of a minor being in a federal prison. There is no federal prison for minors, only contract facilities. In effect,

only Native Americans are subjected to these very harsh penalties, regardless of other mitigating circumstances. South Dakotans in general are not subject to the Adam Walsh Act if they do not cross state lines. The entire matter is Congressional overreach. However, I do not make the laws. I attempt to follow them, as misguided as they may be.

## CONCLUSION

It is apparent from the lack of authority from the Courts of Appeal that the issues presented here fall under the category of "capable of repetition but evading review." Indeed, due to the time limits of the Speedy Trial Act, 18 U.S.C. 3161 *et seq.*, most federal criminal cases will be concluded well before the case can be fully considered by the district court and the court of appeals. The courts that have concluded the Adam Walsh mandatory conditions of release are unconstitutional either facially or as-applied have struck those conditions from the defendant's release order. Those defendants thus ultimately do not suffer from any claimed constitutional intrusion. The courts that have upheld the constitutionality of the conditions have done so after a detention hearing is held and after a review of the law. In this case, the defendant has been afforded a hearing and an appeal. Every effort has been made to protect his constitutional rights to be free from excessive bail and to receive due process.

## ORDER

The decision of U.S. Magistrate William D. Gerdes denying defendant's motion for amendment of the conditions of his pre-trial release is **Affirmed**.

DATED this 16th day of February, 2018.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

24